


**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

**SAN FRANCISCO RESIDENCE CLUB, INC.; THOMAS O'SHEA, as Trustee of the Trust of Thomas and Anne O'Shea; ANNE O'SHEA, as Trustee of the Trust of Thomas and Anne O'Shea; KATE LARKIN DONAHUE; THOMAS O'SHEA; TAK TECH POINT, L.L.C.; KKA CAS, L.L.C.,**

**Plaintiffs,**

**vs.**

**LEADER, BULSO & NOLAN, P.L.C.; EUGENE N. BULSO,**

**Defendants.**

**CASE NO. 2:14-CV-1954-SLB**

**LEADER, BULSO & NOLAN, P.L.C.,**

**Counter Claimant,**

**vs.**

**SAN FRANCISCO RESIDENCE CLUB, INC.; THOMAS O'SHEA, as Trustee of the Trust of Thomas and Anne O'Shea; ANNE O'SHEA, as Trustee of the Trust of Thomas and Anne O'Shea; KATE LARKIN DONAHUE; THOMAS O'SHEA; TAK TECH POINT, L.L.C.; KKA CAS, L.L.C.,**

**Counter Defendants.**

**MEMORANDUM OPINION**

This case is presently pending before the court on defendants' Motion to Dismiss Counts I (Breach of Fiduciary Duty) and II (Conversion) of Complaint. (Doc. 7.)[1] Plaintiffs have sued defendants alleging breach of fiduciary duty, conversion, and violations of the Alabama Legal Services Liability Act [ALSLA], based on alleged wrongdoing related to defendants' representation of plaintiffs in *San Francisco Residence Club v. Baswell-Guthrie*, Case Number: 5:09-CV-0421-CLS [hereinafter *Baswell-Guthrie* litigation]. (*See generally* doc. 1.) Defendants ask the court to dismiss Count I and Count II of plaintiffs' Complaint "[b]ecause the remedy provided by the ALSLA is Plaintiffs' sole and exclusive remedy for Defendants' alleged breaches of duty as legal services providers." (Doc. 7 ¶ 4.) Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendants' Motion to Dismiss Counts I (Breach of Fiduciary Duty) and II (Conversion) of Complaint, (doc. 7), is due to be granted in part and denied in part.

## I. <u>MOTION TO DISMISS STANDARD</u>

Defendants have moved to dismiss Counts I and II of plaintiffs' Complaint "pursuant to Fed. R. Civ. P. 12(b)(6)." (Doc. 7 at 1.) Rule 12(b) provides: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the [12(b)(6) defense of failure to state a claim upon which relief can be granted] by motion . . . . A motion asserting [this] defense[ ] must be made before pleading if a responsive pleading is allowed."

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

Fed. R. Civ. P. 12(b). However, the defense of "[f]ailure to state a claim upon which relief can be granted . . . may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." Fed. R. Civ. P. 12(h)(2). Because this Motion to Dismiss was filed after defendants filed their Answer, it is not a Motion to Dismiss "pursuant to Rule 12(b)(6)," (doc. 7 at 1); rather, it is properly considered a Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c).

Rule 12(c) provides, "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. In determining whether a party is entitled to judgment on the pleadings, [the court must] accept as true all material facts alleged in the non-moving party's pleading, and [it must] view those facts in the light most favorable to the non-moving party." *Perez v. Wells Fargo N.A.*, No. 13-13853, 2014 WL 7229271, *4 (11th Cir. Dec. 18, 2014)(quoting *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)(citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)))(internal quotations and citations omitted). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 965 (11th Cir. 2014)(internal citations and quotations omitted).

## II. STATEMENT OF FACTS

Plaintiffs' Complaint contains the following allegations of fact, which the court has accepted as true for purposes of deciding defendants' Motion to Dismiss/Motion for Judgment on the Pleadings:

> 10. Beginning in 2009, [Defendants] began representing Plaintiffs. Due to the trust and confidence afforded [Defendants] by the Plaintiffs and at the recommendation of [Defendants], the representation was general and resulted in litigation in courts in Alabama, Hawaii and California . . . .
>
> 11. While [Defendants] purported to represent Plaintiffs' interests in *San Francisco Residence Club et al. v. Baswell-Guthrie, et al.*, United States District Court, Northern District of Alabama, Case Number: 5:09-cv-00421-CLS, [Defendants] failed to designate a suitable expert witness causing the Court in that action to dismiss Plaintiffs' claims in their entirety. The Court held that the claims against the defendants in that action, although potentially viable, were due to be dismissed solely based upon [Defendants'] improper designation of an expert. Plaintiffs relied upon [Defendants'] expertise to select a suitable and acceptable expert to prove their claims and damages. A lawyer with reasonable skill in Alabama would have known that the designation of an expert from Tennessee was ineffective. [Defendants] had communications and access to a suitable Alabama expert and had charged Plaintiffs for the Alabama expert's services in another case, yet [they] designated a Tennessee lawyer to try to prove the duty of care necessary to support Plaintiffs' malpractice claims against Wilmer & Lee. Upon information and belief, [Defendants] designated the disqualified Tennessee lawyer because of [Defendants] personal relationship with that lawyer. As a result of [Defendants'] improper designation, the Court dismissed Plaintiffs' claims because Plaintiffs could not prove a breach of the duty of care without an expert from the community. Plaintiffs reasonably relied upon Defendants' touted expertise in federal civil litigation; however, Defendants' failure to properly designate a suitable expert witness caused the Court to enter judgment against Plaintiffs and for [the *Baswell-Guthrie* defendants] as a matter of law after [Defendants] had charged Plaintiffs hundreds of thousands or millions of dollars to bring the claims [Defendants] recommended Plaintiffs assert.

12. [Defendants] intentionally and without authority diverted funds that were paid in settlement from Coldwell Banker to some of the Plaintiffs in direct contradiction of those Plaintiffs' instructions and wrongfully took those Plaintiffs' funds for the improper benefit of [Defendants]. Upon information and belief, [Defendants] took funds due certain Plaintiffs and applied the money to debts allegedly due from those and other Plaintiffs and applied the money to debts allegedly due from [Defendants] representation in other matters. Rather than escrow any disputed funds and pay the remainder to the clients to whom the money was due, [Defendants] improperly misappropriated Plaintiffs' funds.

13. During the course of [Defendants'] representation of Plaintiffs, [Defendants] overcharged Plaintiffs for services and, upon information and belief, billed Plaintiffs for time that was not reasonable, necessary and/or authorized. Within an approximately twenty-four month period, Bulso and one associate charged Plaintiffs nearly $2,000,000 (some minor charges were allegedly incurred by a few other lawyers or staff). [Defendants] represented to Plaintiffs that Plaintiffs' claims were worth the funds charged, plus millions, yet after millions of dollars were billed and paid to [Defendants], [they] abandoned Plaintiffs and recommended Plaintiffs settle for "whatever amount they could get," even suggesting Plaintiffs accept $150,000 from Wilmer & Lee in full and final settlement. With full knowledge of the failures listed below and in the other cases, [Defendants] concealed the true status of the cases with the intention of billing Plaintiffs as much money as they could afford to borrow or pay. Bulso put his interest before the interest of his clients, thereby breaching the duty of loyalty. After misrepresenting to Plaintiffs the events caused by [Defendants] that weakened their cases, [Defendants] simply walked away and sought liens against any funds Plaintiffs might achieve. Defendants acted in their own best interests rather than representing the [interest(s)] of Plaintiffs.

14. [Defendants] also improperly asserted liens in federal court in Alabama, for services performed outside of Alabama and for which [they] had no right to a lien. [Defendants] also improperly asserted a lien on money far in excess what may have been owed by individual clients, such as Tom O'Shea. On or about [October] 28, 2011, [Defendants] filed a notice of attorney's lien in the Alabama Baswell[-]Guthrie case.[2]

---

[2] *See San Francisco Residence Club v. Baswell-Guthrie*, Case No. 5:09-CV-0421-CLS, doc. 177.

> . . .
>
> 16. [Defendants were] Plaintiffs' fiduciar[ies] and thereby owed a duty of care and loyalty to Plaintiffs as Plaintiffs' counsel. As set forth below, [Defendants'] breaches of duty in Alabama are set forth under the Alabama Legal Services Liability Act.
>
> . . .
>
> 23. Certain Plaintiffs settled a claim with one of the underlying defendants in the amount of approximately $200,000. No Plaintiff, including those entitled to the funds, agreed that [Defendants] could take the funds to pay allegedly owed legal fees incurred by all, some[,] or different Plaintiffs.
>
> 24. Without authority and with knowledge of the dispute, [Defendants] intentionally, wrongfully and without permission took the settlement funds either out of [their] trust account or failed to put the distinct and disputed funds within [their] trust account and directly deposited the same in the firm's operating account to be used for [Defendants'] own use. [Defendants] intentionally deprived the settling Plaintiffs of possession and use of their funds. The settling Plaintiffs disputed the amount owed, had legal right to the settlement funds and did not authorize [Defendants] to apply the funds to alleged debts due in other cases and from all Plaintiffs.
>
> 25. [Defendants] wrongfully converted approximately $200,000 of settlement funds that were due to specific Plaintiffs from settlement funds received as a result of those Plaintiffs' legitimate claims against a specific defendant. The settlement funds rightfully belonged to those certain Plaintiffs, and those Plaintiffs did not consent to [Defendants'] wrongful taking.

(Doc. 1 ¶¶ 10-14, 16, 23-25 [footnote added].)

## III. DISCUSSION

Defendants argue, "The Complaint asserts three legal claims arising out of [the] alleged breaches of duty: breach of fiduciary duty (Count I), conversion (Count II), and violation of the

ALSLA (Count III). [(Doc. 1 at 7-10.)] Because the remedy provided by the ALSLA is Plaintiffs' sole and exclusive remedy for Defendants' alleged breaches of duty as legal services providers, however, Counts I and II of the Complaint should be dismissed." (Doc. 7 ¶ 4.) Plaintiffs contend, "Discovery is necessary to assure Plaintiffs do not inadvertently waive their right to pursue claims that are discovered to have arisen from services provided outside of Alabama or if it is discovered that Defendants duties arose from the common law, rather than from Defendants' representation of Plaintiffs in Alabama." (Doc. 10 ¶ 3.) Also, they state, "If discovery reveals that Plaintiffs['] conversion and breach of fiduciary duty claims arise entirely from Defendants' failure to meet the stand[ard] of care while performing legal services in Alabama, the same claims are merely encompassed within the [ALSLA] and dismissal of Counts I and II is a mere technicality without any substantive effect." (*Id*. ¶ 5.)

According to the Alabama Supreme Court:

> Section 6-5-573, Ala. Code 1975, [ALSLA] provides: "There shall be only one form and cause of action against legal service providers in courts in the State of Alabama and it shall be known as the legal service liability action and shall have the meaning as defined herein."
>
> > Section 6-5-572(2), Ala. Code 1975, defines a "legal service provider" as
> >
> > "[a]nyone licensed to practice law by the State of Alabama or engaged in the practice of law in the State of Alabama. The term legal service provider includes professional corporations, associations, and partnerships and members of such professional corporations, associations, and partnerships and the persons, firms, or corporations either employed by or performing work or services for the benefit of such professional corporations,

> associations, and partnerships including, without limitation, law clerks, legal assistants, legal secretaries, investigators, paralegals, and couriers."

Section 6-5-572(1), Ala. Code 1975, defines "legal service liability action" as

> "[a]ny action against a legal service provider in which it is alleged that some injury or damage was caused in whole or in part by the legal service provider's violation of the standard of care applicable to a legal service provider. A legal service liability action embraces all claims for injuries or damage[ ] or wrongful death whether in contract or in tort and whether based on an intentional or unintentional act or omission. A legal services liability action embraces any form of action in which a litigant may seek legal redress for a wrong or an injury and every legal theory of recovery, whether common law or statutory, available to a litigant in a court in the State of Alabama now or in the future."

*Roberts v. Lanier*, 72 So. 3d 1174, 1180-81 (Ala. 2011).

"The [ALSLA] is very broad. It creates one form of action against any 'legal service provider' and exclusively governs any and all actions brought against a legal service provider for damages. [It] embraces all claims, based on either contract or tort, and supersedes any inconsistent provisions of the law." *Mississippi Valley Title Ins. Co. v. Hooper*, 707 So. 2d 209, 217 (Ala. 1997)(Bryan, Special Justice, concurring in the result). However, the definition of legal services provider is limited. The Alabama Supreme Court has held, "The plain language of § 6-5-572(2), as well as that of the other portions of the ALSLA, clearly indicates that the Legislature intended for the ALSLA to apply only to lawyers and to entities that are composed of members who are licensed to practice law within the State of Alabama." *Alabama Educ. Ass'n v. Nelson*, 770 So. 2d 1057, 1059 (Ala. 2000). Also, an attorney not licensed to practice law in Alabama, but associated with

an Alabama attorney, may "meet[ ] that part of the definition of a 'legal service provider' that includes 'the persons, firms, or corporations either employed by or performing work or services ***for the benefit of*** such professional corporations, associations, and partnerships . . . ,'" if the relationship between the foreign attorney or firm and the Alabama attorney or firm constitutes a joint venture. *Wachovia Bank, N.A. v. Jones, Morrison & Womack, P.C.*, 42 So. 3d 667, 678 (Ala. 2009)(citing 46 Am. Jur. 2d *Joint Ventures* § 50 (2006))(emphasis in *Wachovia Bank*). Moreover, the ALSLA covers claims encompassing legal services provided by an attorney while admitted pro hac vice. *See Lanier*, 72 So. 3d at 1183 n.6 ("It seems clear that, after he obtained pro hac vice status, [defendant, a foreign attorney,] qualified as a 'legal-service provider' under the ALSLA.") Alabama has declined to decide whether "claims aris[ing] out of alleged misconduct that is said to have occurred ***before*** [a foreign attorney] obtained [pro hac vice] status," are subject to the ALSLA. *Id*. And, this court has found no case discussing the applicability of the ALSLA to a legal-services liability action based on a breach of the standard of care arising after a foreign legal services provider has withdrawn from his representation in an Alabama proceeding in which they were granted pro hac vice status. Given the Alabama courts' holding limiting the application of the ALSLA with regard to foreign attorneys, the court finds that the ALSLA does not apply to claims against a foreign attorney or firm, not working for the benefit of a licensed Alabama attorney, based on acts or omissions occurring before or after the foreign attorney's pro hac vice representation of his client in an Alabama proceeding.

Defendant Bulso is an attorney licensed to practice law in Tennessee. He and Steven Nieters, both attorneys with defendant Leader, Bulso & Nolan, were admitted pro hac vice on February 24, 2009, in the *Park Tower* litigation. *See Park Tower*, Case No. 5:08-CV-1423-AKK, doc. 43. On October 28, 2011, Bulso and Nieters moved to withdraw from both the *Park Tower* and the *Baswell-Guthrie* cases; their motions were granted on November 3, 2011. *See Park Tower*, Case No. 5:08-CV-1423-AKK, doc. 291 and stamp ruling of November 3, 2011; *Baswell-Guthrie*, Case No. 5:09-CV-0421-CLS, doc. 177 and stamp ruling of November 3, 2011.

Therefore, the court finds that defendants' Motion to Dismiss/Motion for Judgment on the Pleadings,(doc. 7), will be granted in part and denied in part. Defendants' Motion to Dismiss Counts I and II will be granted as to claims based on defendants' alleged wrongdoing arising out of the attorney/client relationship during the time defendants appeared in this court pro hac vice and will be denied as to claims based on wrongdoing arising out of the attorney/client relationship before the time defendants appeared in this court pro hac vice and after they withdrew from representing plaintiffs.

**DONE** this 29th day of September, 2015.

Sharon Lovelace Blackburn

SHARON LOVELACE BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE